# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **MARY D. NIX,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: **1:12-CV-1128-VEH** |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION[1]

Plaintiff Mary D. Nix ("Ms. Nix") brings this action under 42 U.S.C. § 405(g), § 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her applications for Disability Insurance Benefits ("DIB") and Supplemental

---

[1] The court notes that, on February 14, 2013, Carolyn W. Colvin was named the Acting Commissioner of the Social Security Administration. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security."). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the officer of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

Security Income ("SSI").² Ms. Nix timely pursued and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).³

## FACTUAL AND PROCEDURAL HISTORY

Ms. Nix was forty years old at the time of the onset of her alleged disability on January 1, 2009, and was forty-two years old at the time of her hearing before the Administrative Law Judge ("ALJ"). (Tr. 119). She has some high school education, and has completed the eleventh grade. (Tr. 163). Ms. Nix's past employment includes working as a sewing machine operator, a fast food worker, and a wrapper/packer at a paper company. (Tr. 44). She claims she became disabled on January 1, 2009, due to pancreatitis.⁴ *Id*.

On December 1, 2008, Ms. Nix protectively filed a Title II application for a period of disability and DIB. (Tr. 122-28). She also protectively filed a Title XVI application for SSI on that date. (Tr. 119-21). Both applications alleged that Ms.

---

² In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

³ 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

⁴ In her disability applications, Ms. Nix initially alleged an onset date of January 1, 2008. (Tr. 119, 122). She amended the date to January 1, 2009, at the hearing before the ALJ. (Tr. 44).

Nix's disability began on January 1, 2008. *Id.* On February 17, 2009, the Commissioner initially denied these claims. (Tr. 74-75). Ms. Nix timely filed a written request for a hearing on February 23, 2009. (Tr. 90-91).

The ALJ conducted a hearing on the matter on November 30, 2009. (Tr. 25-73). At the hearing, Ms. Nix amended her alleged onset date to January 1, 2009. (Tr. 44). On May 10, 2010, the ALJ issued his opinion concluding Ms. Nix was not disabled and denying her benefits. (Tr. 7-22). Ms. Nix timely petitioned the Appeals Council ("AC") to review the decision on June 25, 2010. (Tr. 118). On March 9, 2012, the AC declined to review her claims. (Tr. 1-6). Thus, the ALJ's decision became the Commissioner's final disability determination.

Ms. Nix filed a complaint with this court on April 16, 2012, seeking review of the Commissioner's final decision. (Doc. 1). With the parties having fully briefed the matter, the court has carefully considered the parties' arguments and the record, and for the reasons stated below, reverses the Commissioner's denial of benefits, and remands the case for further development and consideration.

## **STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.

*Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act

and the Regulations promulgated thereunder.[5] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable

---

[5] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, current through July 11, 2013.

C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

After consideration of the entire record, the ALJ makes the following findings of fact and conclusions of law:

1. Ms. Nix meets the insured status requirements of the Social Security Act through December 31, 2012. (Tr. 12).

2. Ms. Nix has not engaged in substantial gainful activity since January 1, 2009, the alleged onset date of her disability. *Id*.

3. Ms. Nix has the following severe impairments: diverticulosis, remote history of chronic pancreatitis, gastroesophageal reflux disease ("GERD"), and obesity. *Id*.

4. Ms. Nix does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 15).

5.  After careful consideration of the entire record, the ALJ found that Ms. Nix has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967. *Id.*

6.  Ms. Nix is capable of performing past relevant work as a fast food worker. (Tr. 16). This work does not require the performance of work related activities precluded by the claimant's residual functional capacity. *Id.*

Accordingly, the ALJ concludes that Ms. Nix has not been under a disability, as defined in the Social Security Act, from January 1, 2009, through the date of the ALJ's decision and denies both her DIB and SSI claims. (Tr. 18).

## ANALYSIS

When reviewing an ALJ's determination of benefits, "[t]here are specific rules that [the court] follows in deciding whether evidence is substantial." *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985). As analyzed more fully below, the ALJ's determination that Ms. Nix is able to perform a full range of light work is not supported by substantial evidence for at least two reasons:

> 1) The ALJ fails to clarify what weight, if any, he gives to the medical evidence that he discusses in his opinion and also appears to violate the Eleventh Circuit's rules regarding treatment of medical opinions; and
>
> 2) The ALJ fails to clarify that he has considered all of Ms. Nix's severe impairments both separately and collectively in formulating her residual functional capacity.

Therefore, and under the circumstances of Ms. Nix's case, the court concludes that

the Commissioner has committed reversible error.[6]

## I.   THE ALJ'S VAGUE TREATMENT OF THE MEDICAL EVIDENCE CONSTITUTES REVERSIBLE ERROR.

It is well settled in the Eleventh Circuit that an ALJ must state specifically the weight accorded each item of evidence and the reasons for his decision. *See, e.g., Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision."); *Cowart*, 662 F.2d at 735 ("In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."); *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985) ("The decision rendered by the ALJ also does not make clear the weight accorded the evidence considered."); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985) ("We cannot, however, conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." (citing *Owens v. Heckler*, 748 F.2d 1511 (11th Cir. 1984))).

With respect to an ALJ's consideration of medical opinions more specifically,

---

[6] As a result, the court does not reach the merits of the other issues presented on appeal, such as the issue of excessive absenteeism in Ms. Nix's ability to maintain substantial gainful employment, and the lack of the ALJ's reference to a vocationally-related medical statement from a treating, examining, or consultative physician to support his assessment of Ms. Nix's residual functional capacity.

the following framework applies:

> In assessing the medical evidence in this case, the ALJ was required to state with particularity the weight he gave the different medical opinions and the reasons therefor. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Further, he was required to accord considerable weight to appellant's treating physician's opinion absent good cause for not doing so. *Broughton v. Heckler*, 776 F.2d 960, 961–62 (11th Cir. 985) (per curiam). The opinions of nonexamining, reviewing physicians, such as those of Drs. Thomas and Register, when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence. *See Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (per curiam). Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam).
>
> The ALJ, here, disregarded these rules in assigning weight to the various medical opinions. The only opinions that indicated that appellant could meet the medium work requirements of 20 C.F.R. 404.1567(c) (1986) were those of the nonexamining physicians, Drs. Thomas and Register. Their opinions were entitled to little weight, however, and could not serve as substantial evidence.

*Shafarz v. Bowen*, 825 F.2d 278, 279-80 (11th Cir. 1987).

Here, the ALJ's decision runs afoul of these rules relating to treatment of medical evidence. In sum, while the ALJ observes that the record contains "questions as to the etiology of the claimant's abdominal pain[,]" he never clarifies which medical opinions he relies upon when evaluating Ms. Nix's abdominal pain and its impact upon her residual functional capacity. (Tr. 16).

For example, the ALJ recognizes Dr. Bashar Hakim ("Dr. Hakim") as Ms.

Nix's treating gastrointestinal physician and notes that Dr. Hakim attributes Ms. Nix's symptoms of abdominal pain to recurrent pancreatitis. However, the ALJ never states the amount of weight that he affords to Dr. Hakim's opinion that Ms. Nix suffers from chronic pancreatitis.  (Tr. 16).

Further, even though "[t]he law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary", *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)), the ALJ never expressly accepts or rejects Dr. Hakim's opinion (much less articulates any good cause for its rejection). (Tr. 16).  However, at the same time, in listing Ms. Nix's severe impairments, the ALJ characterizes her chronic pancreatitis as one of a "remote history," suggesting to the court that the ALJ, at most, only partially credits Dr. Hakim's opinion.  Such ambiguous treatment of Dr. Hakim's critical medical opinion constitutes reversible error.  *Cf. Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985) ("The decision rendered by the ALJ also does not make clear the weight accorded the evidence considered."); *id.* at 785-86 ("The ALJ, for example, does not explain why she obviously discounts Dr. Meyers's evaluation . . . .").

The ALJ then discusses the report of Dr. Charles Wilcox ("Dr. Wilcox"), a gastrointestinal specialist who evaluated Ms. Nix at Dr. Hakim's request.  The ALJ

10

indicates that Dr. Wilcox's findings "are inconsistent with that diagnosis." (Tr. 16). However, the ALJ does not clarify whether he accepts Dr. Wilcox's opinion over that of Dr. Hakim.

Finally, the ALJ identifies Dr. Adetokunbo Ladipo ("Dr. Ladipo") as Ms. Nix's current primary care physician, and lists the medications that he has prescribed for her, including Pancrease and Pangestyme for the treatment of pancreatitis. *Id.* However, the ALJ, once again does not state what weight he assigns to Dr. Ladipo's records, which are consistent with Ms. Nix's diagnosis and related symptoms of recurring pancreatitis. (Tr. 16).

Instead, without resolving any of these competing medical opinions and other diverging treatment records, the ALJ summarily proposes that the source of Ms. Nix's abdominal pain could be her diverticulosis and ultimately states that "[r]egardless of its source, there is no question that the claimant has presented for treatment of abdominal pain on countless occasions; however, the severity of that pain and its expected affect on her ability to work must still be determined." *Id.* The ALJ then goes on to assess Ms. Nix's credibility. *Id.*

When incompatible medical opinions and other evidence relating to a claimant's allegedly disabling conditions are contained in the record, such as is the situation here regarding Ms. Nix's chronic pancreatitis, then the ALJ's obligation to

11

specify the weight given to such differing proof becomes even more important as *Cowart*, *Hudson*, *Ryan*, and *Shafarz* all confirm. Otherwise, the court is ill-equipped to decipher, much less to aptly review, how the ALJ resolved those matters of conflict. *See Cowart*, 662 F.2d at 735 (finding reversible error in the absence of assigning weight, because such a "statement tells us nothing whatsoever—it goes without saying that the ALJ gave the testimony the weight he believed should be accorded to it"); *Hudson*, 755 F.2d at 786 (rejecting as inadequate ALJ's indication that he has "carefully considered all the testimony given at the hearing and the documents described in the List of Exhibits. . . .") (internal quotation marks omitted); *cf. Jackson v. Astrue*, No. CV 107-020, 2008 WL 596769, at *6 (S.D. Ga. Mar. 4, 2008) ("In this case, Plaintiff contends that the ALJ's consideration of Plaintiff's psychological impairment is inadequate because not only did the ALJ fail to address the opinions of Drs. Hartlage and Lewis, <u>the ALJ also failed to explain the weight given to the medical opinions she did cite</u>.") (emphasis added); *id.* ("Although the Commissioner dedicates four pages of his brief to describing the findings of these four medical opinions and another four pages assigning weight to these opinions in a post-hoc attempt to minimize this error, the fact remains that *the ALJ* did not perform such an analysis at the administrative level.") (citation omitted) (emphasis in original).

Therefore, because the ALJ neglects to assign weight to any of the medical evidence that he identifies as relevant to his decision, he has committed reversible error. Further, while the ALJ is permitted to reject the opinion of a treating physician when good cause to do so is adequately explained in the decision as well as substantiated by the record, an omission in following this framework also amounts to reversible error.

Accordingly, the ALJ's decision is due to be reversed and remanded for further development consistent with this opinion. On remand, the ALJ should discuss all medical evidence with the requisite specificity.

**II. THE COURT CANNOT VERIFY WHETHER THE ALJ CONSIDERS ALL OF MS. NIX'S SEVERE IMPAIRMENTS SINGULARLY OR IN COMBINATION WHEN FORMULATING HER RESIDUAL FUNCTIONAL CAPACITY.**

If the Commissioner finds a medically severe combination of impairments in step two of the sequential evaluation, the regulations provide that the Commissioner must consider the impact of the medically severe combination of impairments throughout the disability determination process. *See Davis v. Shalala*, 985 F.2d 528, 532 (11th Cir. 1993) ("If the Secretary finds, at step two, 'a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.'" (quoting 20 C.F.R. §

416.923)); *see also Reeves v. Heckler*, 734 F.2d 519, 525 (11th Cir. 1984) ("20 C.F.R. § 404.1522 (1983) requires the ALJ to consider the combination of a claimant's impairments. The reason for this is so obvious that it requires no discussion . . . [T]his failure to follow the regulations requires that the case be remanded for further consideration under the appropriate standards").

In *Hudson*, the Eleventh Circuit succinctly explained this rule relating to multiple impairments:

> Appellant does correctly contend, however, that the Secretary did not follow her own regulations. In making her disability determination the ALJ found that appellant had the following impairments: obesity, chronic low back pain (no etiology established), chronic intermittent hypertension, a mild to moderate dysthymic disorder, and a histrionic personality disorder. The ALJ decided that separately none of these impairments was so severe as to render appellant disabled. The ALJ, however, did not consider whether the combination of appellant's impairments rendered her disabled. Where a "claimant has alleged a multitude of impairments, <u>a claim . . . may lie even though none of the impairments, considered individually, is disabling</u>." *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir.1984). The ALJ, therefore, has a duty to consider the impairments in combination. *See* 20 C.F.R. § 404.1522 (1984). <u>Failure to do so requires that the case be vacated and remanded for the proper consideration</u>.

755 F.2d at 785 (footnote omitted) (emphasis added).

The court is unable to verify that the ALJ has considered all of Ms. Nix's severe impairments consistent with these foregoing principles. The ALJ finds that Ms. Nix suffers from the following severe impairments: diverticulosis, remote

history of chronic pancreatitis, GERD, and obesity. (Tr. 12). However, aside from identifying these impairments in his initial findings at step two of the evaluative process, the ALJ fails to discuss two of these four severe conditions at any subsequent point subsequently in his opinion, and only briefly mentions a third one.

Instead, the ALJ begins with a lengthy explanation of the history of Ms. Nix's chronic pancreatitis, including a survey of various medical findings and physician's opinions relating to this condition.[7] (Tr. 13-14). After explaining the reasons for not finding Ms. Nix's depression or hypothyroidism as severe impairments, the ALJ proceeds to the next step of his analysis. (Tr. 15).

During the residual functional capacity portion of his decision, the ALJ discusses Ms. Nix's abdominal pain, questions whether pancreatitis or diverticulosis is the source of that discomfort, and then engages in an analysis of Ms. Nix's subjective allegations of pain and other disabling symptoms, including the credibility of those claims. (Tr. 15-16). The ALJ ultimately discredits Ms. Nix's subjective allegations finding them to be "simply not credible." (Tr. 16).

However, the ALJ never expressly states in his analysis that he is considering

---

[7] Again, the ALJ fails to accord any weight to any of the opinions that he mentions in this explanation of Ms. Nix's history of pancreatitis. Furthermore, this particular segment of the ALJ's opinion seems to be an attempt to persuade the reader that Ms. Nix does not suffer from pancreatitis, although the ALJ determined chronic pancreatitis to be a severe impairment from which she suffers.

the impact of each one of Ms. Nix's impairments both singularly and collectively. Instead, the ALJ appears to have only considered the disabling effects of her abdominal pain <u>caused by chronic pancreatitis</u>. (Tr. 15-16).

Alternatively, the ALJ appears to have lumped her conditions of chronic pancreatitis and diverticulosis together when evaluating her subjective complaints about abdominal pain. (*See* Tr. 16 ("The claimant has a longstanding history of diverticulosis, and ER records confirm that her symptoms have been attributed to that condition on multiple occasions."); *id.* ("Regardless of its source, there is no question that the claimant has presented for treatment of abdominal pain on countless occasions . . . .")). Thus, while the ALJ finds Ms. Nix to suffer from four severe impairments (*i.e.*, diverticulosis, chronic pancreatitis, GERD, and obesity), absent from his residual functional assessment is any discussion of the disabling effects presented by Ms. Nix's severe conditions of GERD and obesity,[8] <u>singularly or in conjunction with</u>, her chronic pancreatitis and diverticulosis. (Tr. 12; Tr. 15-16).

In *Gibson v. Heckler*, 779 F.2d 619 (11th Cir. 1986), the Eleventh Circuit reversed an ALJ's finding that the claimant was not disabled because the ALJ failed

---

[8] Social Security Ruling 02-1p provides guidance on the consideration of obesity as a disabling condition. *See* SSR 02-01p, 2000 WL 628049, at *1 (S.S.A.) ("Purpose: To provide guidance on SSA policy concerning the evaluation of obesity in disability claims filed under titles II and XVI of the Social Security Act (the Act).").

to consider all impairments singularly and in combination. *See Gibson*, 779 F.2d at 623 ("This court agrees that the ALJ failed to consider each impairment alleged by Mrs. Gibson and the combined effect of those impairments."). As the Eleventh Circuit further explained in *Gibson*, the ALJ "did not discuss whether these claimed impairments were sufficiently severe—either singularly or in combination—to create a disability." *Id.*; *see also Strickland v. Harris*, 615 F.2d 1103, 1110 (5th Cir. 1980) ("The ALJ addressed certain of the claimant's complaints separately, tending to minimize them . . . , but he devoted no discussion and made no factfindings as to disability indicated as arising from the interaction or cumulation of even those medical problems whose existence he acknowledged or did not rule out.").[9]

In sum, because the court cannot verify that the ALJ considered all of Ms. Nix's severe impairments, singularly or collectively, in making his residual functional capacity determination, the Commissioner's final decision is not supported by substantial evidence, and the case is due to be remanded for further development of the record for this alternative reason.

## **CONCLUSION**

An "ALJ is required to explain his findings explicitly not just for the claimant's

---

[9] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

benefit[, but also because] [c]lear and specific findings are the *sine qua non* of effective review in this court." *Cook v. Barnhart*, 347 F. Supp. 2d 1125, 1132 (M.D. Ala. 2004); *see also Owens*, 748 F.2d at 1514-15 ("A clear articulation of both fact and law is essential to our ability to conduct a review that is both limited and meaningful."). While a search of the record and a rigorous analysis of the various medical opinions therein may possibly provide support for the ALJ's decision, there is not enough clarity in the ALJ's opinion for this court to conclude that substantial evidence supports it.

Further, this court will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens*, 748 F.2d at 1516. Accordingly, because the ALJ does not properly address the medical evidence relied upon in his decision, and because the ALJ fails to indicate that he considered all of Ms. Nix's severe impairments singularly or in combination when making his residual functional capacity determination, the decision of the Commission is not supported by substantial evidence, and is due to be remanded for further development consistent with these two independent reasons.

**DONE** and **ORDERED** this 23rd day of August, 2013.

　　　　　　　　　　　　　　　　　　　　／s／ VEHopkins
　　　　　　　　　　　　　　　　　　　　**VIRGINIA EMERSON HOPKINS**
　　　　　　　　　　　　　　　　　　　　United States District Judge